Argued and submitted July 21, 1986, reversed and remanded March 18, reconsideration denied April 24, petition for review denied May 27, 1987 (303 Or 455)

# STATE OF OREGON,
*Appellant,*

*v.*

# CLIFFORD L. GOODELL,
*Respondent.*

(G84-345; CA A38647 [control])

# STATE OF OREGON,
*Appellant,*

*v.*

# EUGENE SHERMAN GOODELL,
*Respondent.*

(G84-346, G84-347, G85-73, G85-74; CA A38648)
(Cases Consolidated)

734 P2d 10

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Phillip L. Nelson, Astoria, argued the cause and filed the brief for respondents.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

The state appeals from orders dismissing citations that allege violations of commercial fishing regulations. Defendants are Chinook Indians who were fishing at usual and accustomed Chinook fishing locations on the Columbia River when they received the citations. The trial court held that, under *State v. Goodell,* 38 Or App 511, 590 P2d 764, *rev den* 287 Or 123 (1979), defendants had a treaty right to fish at those locations and that that right precluded state regulation. The state asks us to reconsider *Goodell* in the light of *Wahkiakum Band of Chinook Indians v. Bateman,* 655 F2d 176 (9th Cir 1981). We do so, overrule *Goodell* and reverse the dismissal of the citations.

The underlying facts are found in *State v. Goodell, supra,* and *Wahkiakum Band of Chinook Indians v. Bateman, supra.* The various bands of Chinook Indians who lived along the Columbia River never signed a ratified treaty with the United States. As a result, they have no direct treaty rights to use *their* usual and accustomed fishing locations.[1] Beginning in 1873, various federal actions affiliated the Chinooks with the Quinaults of Washington. The affiliation brought the Chinooks under the Treaty of Olympia which the Quinaults made with the United States in 1855. The treaty guaranteed *the Quinaults* the right to fish at *their* usual and accustomed places. In *State v. Goodell, supra,* we held that the affiliation brought the *Chinooks'* usual and accustomed locations within the guarantee of the treaty. We did so in part because the Ninth Circuit, in *United States v. State of Washington,* 520 F2d 676, 692 (9th Cir 1975), *cert den* 423 US 1086 (1976), had apparently held that Indians on a reservation formed from several tribes and bands, some of whom were parties to treaties and some of whom were not, could fish at the usual and accustomed places of all the tribes and bands, including those which were not signatories to any treaty.

In *Wahkiakum Band of Chinook Indians v. Bateman, supra,* the Ninth Circuit, without mentioning *United States v. State of Washington, supra,* held that the affiliation of the

---

[1] The Ninth Circuit held that Congress abolished the Chinooks' aboriginal fishing rights in 1912. *Wahkiakum Bank of Chinook Indians v. Bateman, supra,* 655 F2d at 180-181. In the present case, defendants do not rely on aboriginal rights, and we therefore do not decide whether we agree with the Ninth Circuit on that point.

Chinooks with the Quinaults merely extended to the Chinooks the fishing rights which the Quinaults already had; it did not expand the treaty to include separate Chinook rights within its limits.

> "Only the Quinault and the Quillehute signed the treaty, and therefore only their fishing grounds are protected by Article III. Article VI merely provided the mechanism for consolidation of other tribes on a single reservation with the Quinault. Subsequent affiliation does not, under Article VI, give the Wahkiakum standing as a treaty signatory, nor does it resurrect and protect any fishing rights the Wahkiakum may have had originally. As members of a tribe subsequently affiliated with the Quinault under the treaty, they are, however, entitled to share such rights as are granted to the original signatories by the treaty. * * * The Columbia River areas claimed by the Wahkiakum were not traditional grounds of the Quinault and thus are not covered by Article III." 655 F2d at 179. (Foonotes omitted.)

The question is whether we should adhere to our reasoning in *State v. Goodell, supra,* or adopt the more recent approach of the Ninth Circuit. The holding in *Wahkiakum Band of Chinook Indians v. Batemen, supra,* is a reasonable resolution of a problem whose answer is not obvious. On the other hand, our rationale in *Goodell* is also supportable. If the issue were simply whether we should adhere to a previously stated position against a contrary argument whose superiority is not compelling, principles of *stare decisis* would lead us to affirm the trial court. However, the issue is not that simple.

In *State v. Goodell, supra,* we found guidance for our decision in a Ninth Circuit case, because the issue is one of federal law and that court has expertise in the subject which is entitled to our respect.[2] In *Wahkiakum Band of Chinook Indians, v. Bateman, supra,* the Ninth Circuit decided the precise issue which we decided in *Goodell* and which is involved here. In doing so it either turned the portion of *United States v.*

---

[2] There are no directly relevant United States Supreme Court decisions. Defendants rely on *Halbert v. United States,* 283 US 753, 51 S Ct 615, 75 L Ed 1389 (1931), in support of their argument that affiliation with the Quinaults brought the Chinooks' usual and accustomed places under the Treaty of Olympia. However, as we noted in *State v. Goodell, supra,* 38 Or App at 517, *Halbert* held only that the tribes were affiliated and that non-resident Chinooks were entitled to allotments of land on the Quinault reservation; it did not address the issue of what fishing rights the Chinooks retained or acquired by the affiliation.

*State of Washington, supra,* on which we relied into *dictum* or implicitly overruled it. In either case, it has undercut the precedential foundation for our decision in *Goodell.* In addition, its decision is controlling on the federal courts in Oregon, and there are practical advantages, which we cannot ignore, when federal and state courts adopt the same interpretation of federal law. The Ninth Circuit has both weakened the foundation of *Goodell* and strengthened the opposite conclusion. Its reasoning is probably as consistent with general principles of Indian law as was ours in *Goodell.* Those considerations override the significance of *stare decisis* in this case. We therefore overrule *Goodell* and hold that defendants do not have a treaty right to fish at the usual and accustomed aboriginal Chinook locations on the Columbia River.

Reversed and remanded.